IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DEVINTREY A.,[1] ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 22-1115-JWL |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to sections 216(i), 223, 1602, and 1614, Title II and Title XVI, respectively, of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c (hereinafter the Act).  Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.    Background**

---

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

Plaintiff protectively filed applications for DIB and SSI benefits on August 31, 2020. (R. 12, 200). After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff claims the ALJ erred in assessing Plaintiff's residual functional capacity (RFC) because Dr. Rosinski's opinion, allegedly the only evidence addressing functional mental limitations the ALJ found persuasive, conflicted with the RFC assessed and the ALJ failed properly to explain and support with record evidence how he reached the RFC limitations assessed.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in Bowling)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner

assesses claimant's RFC.  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, he is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  The court addresses the errors alleged in Plaintiff's Social Security Brief.

## II.   Discussion

Plaintiff points out the ALJ found the state agency psychological consultants' opinions[2] unpersuasive because although limited, the record contained sufficient evidence to show severe mental impairments limiting Plaintiff's ability to perform basic mental

---

[2] The court recognizes that the evaluations performed by state agency psychologists are properly called prior administrative medical findings.  20 C.F.R. §§ 404.1513(a)(5), 416.913(a)(5).  However, they are evaluated in the same manner and by the same standards as medical opinions and are commonly called medical opinions.  The court follows the common practice as used here by Plaintiff and the ALJ.  (R. 25) (but see R. 24 (discussing evaluation of medical opinions and prior administrative medical findings)).

4

work activities but, nevertheless, the consultants did not opine on Plaintiff's mental functioning. (Pl Br. 11) (citing R. 25). He notes the ALJ found the opinions of the Veterans Affairs (VA) C&P evaluators including a psychologist, Dr. Rasmussen, partially persuasive because although "the medical record does support a finding that [Plaintiff's] mental impairments were severe and caused limitations, 'the pattern of clinical findings with conservative intermittent mental health treatment does not support a finding that the claimant is disabled.'" Id. (citing R. 25). He continues:

> The ALJ then addressed the only medical evidence of record addressing [Plaintiff's] specific functional mental limitations in a work setting. On July 19, 2021, Dr. Rosinski [(a VA psychologist treating Plaintiff] opined [Plaintiff] would miss work due to bad days more than four days per month and he would be off-task 25% of the time even in the performance of simple tasks. (Tr. at 1295). Out of 20 areas of mental functioning, Dr. Rosinski opined a mild limitation in two areas, a moderate limitation in seven areas, a marked limitation in five areas, and an extreme limitation in six areas. (Tr. at 1295-1296).
>
> While the ALJ found the marked and extreme limitations, off-task behavior, and absenteeism unsupported by the record, he generally found the opinion partially persuasive. (Tr. at 25-26). While the ALJ never directly addressed the mild to moderate limitations, the ALJ impliedly found the mild to moderate limitations from the opinion persuasive.

Id. 11-12. Plaintiff notes the ALJ limited Plaintiff to simple work-related decisions but argues he did not include limitations analogous to any of Dr. Rasmussen's other mild or moderate limitations and,

> Further, the ALJ offered no explanation for how he incorporated the opinion after finding it partially persuasive. Rather, the ALJ explained that the marked and extreme limitations, off-task behavior, and absenteeism were not supported by [Plaintiff's] daily activities, moderate treatment history, and improvement with treatment. (Tr. at 26). It is unclear how this medical opinion supported the RFC when it conflicted with the RFC in all but one area of mental functioning.

5

Id. 12.

Plaintiff suggests the ALJ did not properly articulate the consistency factor when stating his reasons for finding Dr. Rosinski's opinion only partially persuasive and argues that, in any case, "the ALJ still erred by failing to explain how this opinion supported the RFC when it conflicted with the RFC in so many ways."  (Pl. Br. 13) (citing Drapeau v. Massanari, 255 F.3d 1211, 1214 (10th Cir. 2001) ("[W]hen ... an ALJ does not provide any explanation for rejecting medical evidence, we cannot meaningfully review the ALJ's determination."); and Gaye Raynae A. v. Saul, Civ. A. No. 20-2021-JWL, 2020 WL 6059731, at *4 (D. Kan. Oct. 14, 2020) (the ALJ violated SSR 96-8p by affording significant weight to both State agency consultants' opinions and then failing to resolve the ambiguity between the opinions themselves and between one opinion and the RFC)).

Plaintiff acknowledges that this court "has rejected arguments that the ALJ failed to include limitations from a partially persuasive medical opinion from the RFC" because the ALJ explained the reasons for his persuasiveness finding and the regulations require no more.  Id. 14 (citing Terri Ann B. v. Saul, Civ. A. No. 20-1077-JWL, 2020 WL 7316099, at *6 (D. Kan. Dec. 11, 2020)).  He argues, however,

> this case differs from Terri Ann B. because the ALJ in that case relied on numerous other medical opinions to create the RFC; therefore, this Court [sic] found the ALJ's decision reasonable based on the record as a whole. Id.  And while this Court [sic] generally differs from other courts in this district on the particular issue of resolving the conflict between a partially persuasive medical opinion and the RFC, here, the issue is more complex.
>
> Indeed, the issue is not simply that the ALJ's RFC differs from a medical opinion he found partially persuasive and he did not address those differences.  In this case, Dr. Rosinski's medical opinion contained the only medical evidence of record addressing [Plaintiff's] specific functional

6

mental limitations in a work setting and, after impliedly crediting the mild to moderate limitations, the ALJ created a mental RFC conflicting with Dr. Rosinski's opinion and one without basis in the record. Fleetwood v. Barnhart, 211 F. App'x 736, 740 (10th Cir. 2007) (unpublished) (the ALJ's RFC was not supported by substantial evidence where reliance on the State [sic] agency consultant's opinion was improper and the record contained no other medical evidence addressing Plaintiff's ability to function in a work setting). And similar to Fleetwood, the ALJ in this case recognized that the record contained treatment notes and he summarized them, but nowhere in the treatment notes did [Plaintiff's] physicians address his specific functional abilities in a work setting. Therefore, the record was "insufficient to draw reliable conclusions about h[is] ability to work." Id.

It is true that the ALJ summarized the medical evidence, but his evenhanded assessment does not explain how such evidence lead him to the RFC, especially in the face of Dr. Rosinski's opinion. Rather, the ALJ's assessment indicated that the ALJ found the evidence supported finding [Plaintiff's] mental impairments to be severe and that they caused moderate limitations in functioning, but he pointed to no evidence to explain how he concluded the specific functional limitations in the RFC.

Id. at 15.

Plaintiff argues the ALJ's error harmed him because two of the jobs the ALJ relied upon require reasoning level two (the ability to understand, remember, and complete detailed instructions) and all three jobs require abilities listed in Program Operations Manual System (POMS) DI 25020.010(B)(3) (SSA April 5, 2007) which Plaintiff does not possess. Id. 16.

The Commissioner argues the ALJ's RFC assessment was supported by his findings that Plaintiff's allegations of disabling symptoms were not consistent with the record evidence of frequent normal mental status examinations and of improvement with treatment, especially when he was compliant with the treatment source's advice.

(Comm'r Br. 5-7).  She argues the RFC assessed accounted for all the medical opinion evidence.  Id.

She agrees with Plaintiff's explanation of the ALJ's persuasiveness evaluation of the state agency psychological consultants' opinions and of Dr. Rasmussen's opinion. (Comm'r Br. 8).[3]  She argues the ALJ found:

> the opinion by Dr. Rosinski was "only partially persuasive" because it was unsupported by the VA record showing generally unremarkable mental status examination findings and improvement with treatment; because it was inconsistent with Plaintiff's activities of daily living and self-reported mental and social abilities; and because the form supplied to Dr. Rosinski "d[id] not contain an option for 'no' restriction and requires the individual completing the form to start with a 'mild' limitation"

Id.

The Commissioner argues the ALJ explained how the evidence supported his mental RFC assessment and "drew a direct link between the work-related mental limitations he had assessed and his findings about the evidence discussed earlier in the decision."  Id. 9.  She points out that Plaintiff appears to suggest RFC limitations must be linked to medical opinion evidence and argues, "This is simply incorrect."  Id. 10 (citing Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012); Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004); and Berumen v. Colvin, 640 F. App'x 763, 767 (10th Cir. 2016)).  She argues, "the ALJ's only obligation is to 'consider those medical opinions or prior administrative medical findings' and to 'articulate how [he] considered the medical opinions' using the factors described in" 20 C.F.R.§ 404.1520c and he "did just that."  Id.

---

[3] Only the odd-numbered pages of the Commissioner's Brief are numbered, but the court has interpolated to cite the even-numbered pages.

11 (emphasis in original). She asserts an ALJ is not required to explain which parts of a partially persuasive opinion "he rejected and which parts he adopted, including how he adopted those parts into the RFC" assessed. (Comm'r Br. 11). She continues, he "is only required to explain how persuasive an opinion is based on the opinion's supportability … and consistency." (Comm'r Br. 11) (emphasis in original).

### A. The ALJ's Relevant Findings

The ALJ found Plaintiff alleged disability beginning August 1, 2013 and had not engaged in substantial gainful activity since that date. (R. 12, 15). He found Plaintiff had the severe mental impairments of depressive disorder, anxiety disorder, post-traumatic stress disorder (PTSD), and substance abuse. (R. 15) (finding no. 3). He noted that Plaintiff also alleged headaches and night terrors but found they were either not diagnosed by an acceptable medical source, did not meet the duration requirement for disability, or are symptoms and he concluded they are not medically determinable impairments. Id. 16-17. Plaintiff has not contested this finding. The ALJ found the severity of Plaintiff's impairments do not meet or medically equal the severity of a Listed Impairment. Id. 17. He specifically considered Listings 12.04 (bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.15 (trauma- and stressor-related disorders) and found Plaintiff has moderate limitations in each of the four broad mental functional areas used by the agency to assess mental impairment: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself (the paragraph B criteria). Id. 18-19. He also found the paragraph C criteria are not satisfied

and determined Plaintiff does not meet or medically equal the severity of any Listed mental impairments. (R. 19).

The ALJ assessed Plaintiff with the mental abilities:

> to carry out detailed but uninvolved instructions in the performance of simple, routine and repetitive tasks in a low stress work environment with no fast-paced production requirements involving simple work-related decisions, and with only occasional judgment and work place changes. The claimant can occasionally respond to and have interaction with supervisors, coworkers and the general public.

Id. at 19-20 (finding no. 5, bold omitted). He found Plaintiff's allegations of symptoms "are not entirely consistent" with the record evidence including Plaintiff's activities of daily living, clinical findings, and the level of treatment received. Id. 20-22. He found the severity and limiting effects of Plaintiff's allegations of disabling psychiatric symptoms are inconsistent with the record evidence including his allegation he did not pursue treatment due to shame and the ALJ's finding Plaintiff "has not exhibited any significant symptoms regularly such as panic attacks, suicidal ideations/attempts with plans, or psychosis" except for exacerbations in 2018 which "were quickly alleviated with counseling over the phone and did not require inpatient hospitalization for mental health crisis." Id. 23.

The ALJ explained his assessment of Plaintiff's mental RFC:

> Although I find the claimant's allegations are not fully consistent with the evidence, a review of the limitations resulting from the claimant's impairments indicates that they are "severe" and require a reduction of the residual functional capacity. I have accommodated the claimant's moderate difficulties in understanding, remembering, or applying information, interacting with others, maintaining concentration, persistence or maintaining pace, and adapting or managing himself by limiting him accordingly. The claimant's assertions related to his inability to function

due to mental deficits have been considered, but are not fully persuasive because the medical record does not support all of his allegations.

(R. 24).

The ALJ also explained his evaluation of the persuasiveness of the medical opinions. He noted that the state agency psychological consultants found insufficient evidence to assess functional mental limitations for Plaintiff. He explained he found that opinion not persuasive because, "While there is limited [evidence] in the record during the relevant periods, as noted above, there is sufficient evidence to show that the claimant did indeed have severe impairments that limited his ability to perform even basic work activities." Id. 25. He found Dr. Rasmussen's opinion that Plaintiff "has impairment in his ability to work, but that he can manage his finances" is only partially persuasive because although "the medical record does support a finding that the claimant's mental impairments were severe and caused limitations in mental functioning, the pattern of clinical findings with conservative intermittent mental health treatment does not support a finding that the claimant is disabled." Id.

The ALJ thoroughly evaluated the persuasiveness of Dr. Rosinski's opinion, finding it "only partially persuasive:"

> Lastly, in July 2021, the claimant['s] treating provider Jenny M. Rosinski, Ph.D., provided a medica[l] source statement on the claimant's mental functioning (Exhibit 5F). Dr. Rosinksi opined the claimant would miss more than four days of work per month, would be off-task 25 percent or more during the day to perform even simple tasks, had up to moderate limitations in understanding and remembering, up to extreme limitations in sustained concentration and persistence, up to extreme limitations in social interaction, and up to marked limitations in adaptation (Exhibit 5F). Overall, Dr. Rosinksi's opinion is only partially persuasive because it is only partially supported by the evidence of record as a whole. While the

> claimant's more recent treatment history including the claimant's necessity to live and receive treatment in a VA "Dom" [(Domiciliary Unit)] supports a finding that the claimant's history of depressive disorder, anxiety disorder, PTSD, and substance abuse disorders are severe and require a reduction in mental functioning, the generally unremarkable mental status findings and record of improvement while on medication do not support Dr. Rosinski's "extreme" or even "marked" findings. Indeed, the evidence including the claimant's own testimony shows that he is capable of interacting with others at the grocery store, therapy appointments, and that he [can] maintain friends. The extreme limitations in concentration and persistence are also unsupported in that, the claimant is able to perform many activities of daily living including preparing meals for himself, performing household chores, and driving, which show that he is capable of at least simple, routine, and repetitive tasks. I also note that the form completed does not contain an option for "no" restriction and requires the individual completing the form to start with a "mild" limitation (Exhibit 5F).

(R. 25-26).

The ALJ summarized his assessment of Plaintiff's RFC, and as relevant to Plaintiff's mental impairments, stated:

> Additionally, the claimant's depressive disorder, anxiety disorder, PTSD and substance abuse cause moderate difficulties with understanding, remembering, or applying information; concentration, persistence or maintain pace; and adapt and manage oneself that result in limitations, including [the ability] to carry out detailed but uninvolved instructions in the performance of simple, routine and repetitive tasks in a low stress work environment with no fast-paced production requirements involving simple work-related decisions, and with only occasional judgment and work place changes. Further, the claimant's severe mental impairments also cause moderate difficulties with [his] ability to interact with others that result in limitations, including can occasionally respond to and have interaction with supervisors, coworkers and the general public. Weighing all relevant factors, I find that claimant's allegations do not warrant any additional limitations beyond those established in the residual functional capacity previously outlined in this decision. There is evidence in the record that the claimant's impairments are not as severe as alleged and do not prevent [him] from performing basic work activities. Therefore, I find that there is a lack of evidence in the medical record to support the claimant's alleged inability to perform basic work activities. The residual functional capacity

> is based on the entire medical record and adjusted to give the claimant the benefit of the doubt with regard to [his] allegations of disability.

(R. 26).

### B.     Analysis

Plaintiff's argument is based upon two premises, that an RFC must be based upon medical evidence, more specifically, upon medical opinion evidence and that an ALJ must explain why he did not adopt each limitation in a medical opinion which he found partially persuasive. Neither premise is correct.

RFC is an assessment of the most a claimant can do on a regular and continuing basis despite his limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); see also, White, 287 F.3d at 906 n.2. It is an administrative assessment, based on all the evidence, of how a claimant's impairments and related symptoms affect his ability to perform work related activities. Id.; see also SSR 96-5p, 1996 WL 374183, *5 (SSA 1996) ("The term 'residual functional capacity assessment' describes an adjudicator's findings about the ability of an individual to perform work-related activities."); SSR 96-8p, 1996 WL 374184, *2 (SSR 1996) ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s) ... may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."). The Commissioner has provided eleven examples of the types of evidence to be considered in making an RFC assessment, including: medical history, medical signs and laboratory findings, effects of treatment, reports of daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms,

13

attempts to work, need for a structured living environment, and work evaluations.  SSR 96-8p, 1996 WL 374184, *5.

"[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion."  Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012) (citing Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004)); Wall, 561 F.3d at 1068-69).  The narrative discussion required by SSR 96-8p to be provided in an RFC assessment does not require citation to a medical opinion, or even to medical evidence in the administrative record for each RFC limitation assessed.  Castillo v. Astrue, Civ. A. No. 10-1052-JWL, 2011 WL 13627, *11 (D. Kan. Jan. 4, 2011).  "What is required is that the discussion describe how the evidence supports the RFC conclusions and cite specific medical facts and nonmedical evidence supporting the RFC assessment."  Id.  See also, Thongleuth v. Astrue, Civ. A. No. 10-1101-JWL, 2011 WL 1303374, *13 (D. Kan. Apr. 4, 2011).  There is no need in this case, or in any other, for the Commissioner to base the limitations in the RFC assessed upon specific statements in medical evidence or opinions in the record.

The SSA propounded Revisions to Rules Regarding the Evaluation of Medical Evidence in January 2017.  82 Fed. Reg. 5,844-01, 2017 WL 168819 (SSA Jan. 18, 2017).  Those revisions included a new section entitled "How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017."  20 C.F.R. §§ 404.1520c, 416.920c (2017).  The regulation provides that the SSA will consider each medical source's opinions using five factors; supportability, consistency, relationship of source to claimant, specialization, and other

14

factors tending to support or contradict a medical opinion or prior administrative medical finding.  Id. §§ 404.1520c(a)(c)(1-5), 416.920c(a)(c)(1-5).  It provides that the most important factors in evaluating persuasiveness are supportability and consistency.  Id.

The regulation explains that the decision will articulate how persuasive the SSA finds all medical opinions and prior administrative medical findings.  Id. §§ 404.1520c(b), 416.920c(b).  The articulation requirement applies for each source, but not for each opinion of that source separately.  Id.  It requires that the SSA "will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision."  Id.

Here, the ALJ explained how persuasive he found the medical opinions at issue and Plaintiff does not argue error in the persuasiveness findings.  Rather, he acknowledges the ALJ found Dr. Rosinski's opinion only partially persuasive, but argues he rejected Dr. Rosinski's marked and extreme limitations, off-task behavior, and absenteeism, and impliedly found his mild and moderate limitations persuasive but failed to explain why he did not include all of Dr. Rosinski's moderate limitations in the RFC he assessed.

First, Plaintiff errs in asserting "the ALJ never directly addressed the mild to moderate limitations," but impliedly found Dr. Rosinski's mild and moderate limitations persuasive.  (Pl. Br. 12).  As Plaintiff acknowledges, the ALJ rejected Dr. Rosinski's marked and extreme limitations, but he also found Plaintiff's performance of daily activities shows "he is capable of at least simple, routine, and repetitive tasks" and that

15

the form on which Dr. Rosinski recorded her opinions does not allow a place to indicate an ability is not limited but implies all mental abilities will be at least mildly limited, thereby calling into question even the persuasiveness of her opinions respecting mild or moderate limitations. (R. 26). The ALJ explained how persuasive he found the opinions of Dr. Rosinski and more is not required.

Moreover, contrary to Plaintiff's suggestion otherwise, the ALJ explained his consideration of the consistency factor in evaluating Dr. Rosinski's opinion. He noted Dr. Rosinski's opinion is inconsistent with "the evidence including the claimant's own testimony [which] shows that he is capable of interacting with others at the grocery store, therapy appointments, and that he is [able to] maintain friends." Id. 26.

Additionally, an ALJ is not required to explain why he did not adopt each limitation in a medical opinion which he found partially persuasive. Having properly found Dr. Rosinski's opinion "only partially persuasive;" id., 25; it would have been enough if, as Plaintiff argues, the ALJ had only credited Dr. Rosinski's opinion Plaintiff is limited in the ability to make simple work-related decisions. (Pl. Br. 12). However, the limitation to "detailed but uninvolved instructions" suggests he at least partially recognized Dr. Rosinski's limitations to understand, remember, and carry out detailed instructions; the limitation to occasional judgment and work place changes implicates the ability to remember locations and work-like procedures; and the ability to occasionally respond to and have interaction with supervisors and coworkers implicates the ability to ask simple questions or request assistance.

16

Plaintiff's appeal to the cases of Drapeau; Endriss v. Astrue, 506 F. App'x. 772, 777 (10th Cir. 2012); and Gaye Raynae A. do not require a different result. All three cases were decided under the treating source rule in the prior regulations requiring relative weighing of various medical opinions based upon the relationship between the medical provider and the claimant. In Drapeau, the ALJ "completely disregarded" a treating physician's opinion that the plaintiff's impairments met a Listed impairment. 255 F.3d 1211, at 1213. Thus, the court found it could not meaningfully review the ALJ's determination. Here, however, the ALJ did not disregard Dr. Rosinski's opinion but explained why he found it only partially persuasive, and his rationale is supported by the record evidence. In Endriss, as Plaintiff cites, the court noted it could not remand because the ALJ's discussion of the opinion "is 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" 506 F. App'x at 777 (citing Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir 2007)). Here, the ALJ was not "weighing" the opinion of Dr. Rosinski, but he did explain why he found it only partially persuasive and that is sufficient. In Gaye Raynea A., the ALJ accorded significant weight to the opinions of both state agency consultants, but there was significant, material difference between the opinions of the consultants, creating an ambiguity between the opinions and the RFC assessed by the ALJ which had not been resolved, discussed, or perhaps even noticed by the ALJ, and required remand for resolution. 2020 WL 6059731 at * 3-4. Here, the ALJ explained his bases for finding Dr. Rosinski's opinion only partially persuasive and the

17

bases for the RFC he assessed. There is no ambiguity or material inconsistency requiring resolution.

Because medical opinion evidence or even medical evidence is not required to support each RFC limitation assessed, because the ALJ did not impliedly find Dr. Rosinski's mild and moderate limitations persuasive, and because, as Plaintiff acknowledges, the ALJ made an evenhanded assessment of the record evidence, Plaintiff's appeal to this court's decision in Terri Ann B. does not require a different outcome.

Plaintiff has shown no error in the ALJ's decision below.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated April 21, 2023, at Kansas City, Kansas.

 s/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**